May it please the Court, I'm David Wilkinson for the State of Alaska. This time I'd like to request five minutes of time for rebuttal. This case concerns the state's rights to four trails with routes in the late 1800s. Decades after the trails were established, two of the underlying parcels were conveyed as Alaska Native allotments. One of the allottees blocked access and the state sued to clear its title. The District Court erred in rejecting the case for lack of jurisdiction. It had jurisdiction for two main reasons. First, it had quiet title act jurisdiction because the state's rights-of-way under RS-2477 predated the purdial allottees' use in occupancy. And under this court's opinion in Bryant, there's no colorable claim to Indian kind of an easement that was granted there, a power easement, withdrew the land from settlement. So nothing after that can arise, basically. But Titus is a case in which the Indian Board of Land the general right-of-way doesn't withdraw this land from settlement. And then there's an allotment hearing and the state's a party to it and everything else and they go ahead with these allotments. It seems to me it's a different record from Bryant because it looks like this land, despite the subject to a subsequent allotment. Well, there is not a difference between the appropriation in the Federal Highway Act rights-of-way in Bryant and Goodlatte and the RS-2477 rights-of-way. In Titus, the IVLA said that an allotment could convey subject to an RS-2477 right-of-way. And in Goodlatte, the IVLA also said that the allotment could convey subject to the Federal Highway Act right-of-way in Goodlatte. So it's in Bryant, it's true that the majority of the allotment could not convey, but that has to do with the size of that Federal Highway Act material site right-of-way. But where the right-of-way is a corridor through the allotment, the allotment can convey, but not within that right-of-way. And that's what this Court held in construing Goodlatte. And when the allotments were adjudicated, they were subject to a right-of-way, but it was much smaller than what the State is claiming now. That's correct. And in Titus, this, the IVLA held that the State's pre-existing rights-of-way under RS-2477, they survive allotment regardless of what's in the allotment certificate. And in fact, the BLM has expressed policy of not adjudicating RS-2477 rights-of-way at the time of allotment. Therefore, it doesn't matter what was in the allotment certificates, that was not an adjudication of the State's pre-existing rights under RS-2477 rights-of-way. And under IVLA precedent, those RS-2477 rights survive the allotment regardless of what's in the allotment certificate. Okay, but then, so then you have to sue the, anybody who has a to quiet title to the... Yeah, the United States is one of those parties, isn't it? That's correct, the United States holds its own restriction on alienation. And why doesn't the Quiet Title Act exception take you out of the Quiet Title Act entirely? Why doesn't it? Yeah. It doesn't be, because you do have to name the United States and the allotment there's jurisdiction under the Quiet Title Act to determine those pre-existing rights. Because under the Alaska Native Allotment Act, allotment was only available on vacant, unappropriated, and unreserved land. Now, what you're saying is that you ought to win your case. And I think what the court is saying is that you have to sue the United States successfully over this Indian allotment and the rights to it The court always has jurisdiction to determine its own jurisdiction. Certainly, and it did, and it said we don't have jurisdiction. Right, but to the extent that there's any questions that need to be resolved to determine their jurisdiction, that is to, if determining whether the state has accepted RS-247 rights-of-way before the parties, use and occupancy, those are jurisdictional facts and jurisdictional questions that the district court could resolve and should resolve on remand. The court always has jurisdiction to determine that jurisdiction. And to the extent that the merits are intertwined with the jurisdiction this court held in safe air for everyone, that's a permissible determination that the court can take up the merits where they're intertwined with jurisdictional questions. And that's what the state requests this court do on remand. So because those RS-247 rights-of-way, preserved, valid, protected rights-of-way, because the state has pleaded facts demonstrating acceptance of the rights-of-way, some of them as early as 1896 and also through public authority in the 1920s, but the parties' entry, lawful entry, wasn't until 1955 for Anne Lynn and in the 1960s for Agnes, the state's rights-of-way pre-exists the parties' use and occupancy. And there's jurisdiction to take up that RS-247 question. If the state had pleaded acceptance after the parties' use and occupancy, that would be a different question. But because the state has only pleaded interests that pre-exist the parties' use and occupancy, there's jurisdiction to determine that. That use and occupancy had never been essentially adjudicated or noticed or anything else until this case. Is that correct? The parties' use and occupancy? Mm-hmm. The state's claim to use and occupancy. Right. The state's claim to the RS-2477s had not been adjudicated as RS-2477 rights-of-way prior to this case. The second reason that the district court had jurisdiction was for condemnation, and that's under 25 U.S.C. 357, which provides that allotted lands can be as any other private landowner. What do we do with Pend Oreille? The Ninth Circuit case where Judge Grutschiefer said, well, it wouldn't get the United States' consent. What do we do with it? There are other cases going the other way, but they're not the most recent. Right. Well, the Pend Oreille case is unique because... I agree. ...and it should be limited to its unique facts because there the condemning authority attempt to use condemnation to justify an action that would be flooding that would impact both condemnable allotted land and non-condemnable reservation land. In order to acquire a right to flood the reservation land, the condemning authority would have needed permission because that land doesn't fall under 25 U.S.C. 357. So in order to successfully carry out the act that the condemning authority wanted to do, that is the flooding, they would have needed permission because it would have impacted reservation land. And so that case can be limited to those unique facts. Let's suppose, counsel, that I didn't accept your argument on the Quiet Title Act, but I thought that there might be some merit to the state's condemnation rights. So if you were to proceed on your 357 rights, do you have to assume that they have the entire allotment, that that was properly allotted and that you can't challenge the title on that, and so that the state of Alaska is willing to pay for the right-of-way from top to bottom through this property? No, the court in the condemnation action can determine the state's ownership of the right-of-way. Doesn't that then overlap with the Quiet Title Act? Doesn't that create a little bit of tension between the 357 rights and the Quiet Title Act because you're sort of getting Quiet Title Act relief but under a different guise? It may overlap, but that's permissible. The court should read 25 U.S.C. 357 as an exception to the Quiet Title Act because it expressly authorizes actions that by their very nature implicate, challenge, and in fact remove federal authority over land. I thought the case law was pretty clear that the Quiet Title Act action was the exclusive means by which you could litigate basically your property rights in a particular parcel of land. So I guess maybe what's implied in Judge Bybee's question, I sort of assume that if you were to lose on the Quiet Title claim but we were to agree with you on the condemnation claim, your only option would be to basically pay for everything if that's what the state wanted to do, and if the state didn't want to, then I guess you could just go home. But I didn't think you got to basically have it both ways. Well, the state is willing to condemn and compensate if the district court concludes that the rights of way that the state owns are less, that the state actually holds are less than what the state is pleading entitlement to. So if the state pleads entitlement to a wider right of way than the district court ultimately holds the state owns, then the state could choose then to condemn and compensate for those divergent portions. But you still want to argue your 24-77 rights, don't you, in the condemnation action? You want to say, well, we're willing to pay for everything that we don't own, but we think that we own everything that we were using before the allotment. Right, and determining ownership is a necessary part of evaluation in any condemnation action, and it's permissible in a condemnation action to clear title or expand rights of way. And again, if we disagreed with you on all of this, I'm asking you to assume, simply for purposes of my question, that the quiet title action can't go forward. So if the quiet title action can't go forward, doesn't that have to foreclose the question of who owns the land? It shouldn't, because as a policy matter, it wouldn't make sense to limit condemnations on Indian allotments to condemnations over pristine allotments. It would make more sense to allow the less intrusive condemnation over preexisting rights of way. There's nothing in 25 U.S.C. 357 that indicates that condemning authorities should have to forfeit existing public rights in order to bring a condemnation. I'm not persuaded on that point, but let me ask you this. Again, totally, this is all hypothetical because we don't know how we're going to rule on the quiet title action claim. But let's assume that we were to agree with the district court on that front. That claim is out. We were to think that perhaps if you, the state, wanted to pay for everything, a condemnation claim could go forward. If we wrote the opinion in that way, then the state would just have the option of deciding whether it wanted to bother going forward with the condemnation claim. But the result wouldn't be to dismiss it for lack of jurisdiction. I guess I assume that that was your ultimate argument. Regardless of what we hold on the quiet title action claim, dismissal of the condemnation claim isn't the right remedy, as the district court said here. It's just to say, too bad, you're not going to be able to litigate ownership in the condemnation action. Pay for it all, pay for everything, or go home. Right. Dismissing on the quiet title does not mean that the court should also dismiss on condemnation. The condemnation account can go forward. Right. I think the premise of both of our questions was that maybe the 357 can go forward. The question is, how much leeway do we give the district court in valuing the property? Do we tell the district court that it must assume that the quiet title action has been resolved and resolved against the state, and therefore simply a question of valuing the property? Or do we say, well, you have to figure out who owns what, and so notwithstanding there's no quiet title action, you have a different way of getting there under the 357. And I think allowing the court to determine ownership is the proper way to go there, and it's expressly authorized by Congress. Congress could have changed this condemnation statute when it crafted the Indian lands exception to the Quiet Title Act, but it didn't. The other cases where quiet title is barred, or where other actions are barred, involve things that are more general, like APA challenges, officers' suits. But this necessarily falls within actions that implicate federal title, and therefore Congress accepted allotted lands from those general protections, just like this court said that it treats allottees in the same position as any other private landowner. Counsel, you were trying to reserve five. You're down to one. We helped you take up that time. I will allow you a couple of minutes if you'd like to reserve the rest of your time. Thank you. I'd like to reserve that time. And I'm going to allow you at least two minutes on rebuttal. Thank you very much. Thank you. May it please the Court. John Arbab for the United States. I'd like to start right in with the quiet title. Counsel, how are you dividing your time? Your Honor, I will be taking seven minutes, Mr. Kramer five and Mr. Monkman three. Are you all dividing issues or just straight time? We're not dividing issues, Your Honor. Okay, great. If I could first address the quiet title question. As we see it, the question is, does the United States have a colorable claim that these allotments are restricted Indian lands for purposes of the Indian lands exception to the Quiet Title Act? And under Bryant and prior president of this court, that just means is the government's position arbitrary or frivolous? And we don't think that's the situation here. But we couldn't know that, could we, unless we got to the merits, right? I mean, aren't the merits just sort of bound up with the jurisdictional question here? No, Your Honor. This is not an intertwined case. This was not a so-called factual attack when the parties filed their 12B1 motion. It's a facial attack. The district court assumed the relevant allegations to be true and just found that under this court's case law the government's position was not arbitrary or frivolous. Well, if we assume, okay, you're right, and I forgot about that. So if we assume that the allegations are all true, then there was a preexisting RS-2477 right that arose before the parties even began using the land, right? No, Your Honor, because as we point out in the brief, that's a legal conclusion, which is not among the types of allegations that are considered to be true in a 12B1 posture. What I would submit the court should look at is what did the government actually decide in the process of administratively issuing the allotment certificates. Nothing under Titus, right? It decided nothing about the RS-2477 rights. That's true, Your Honor, but BLM did make some very specific findings in the process of issuing these allotments. But I'm really interested in your position on this. I read Titus to say just what your opponent said, that basically we as the IBLA are not going to get involved in this. There are other entities much more competent than we are to adjudicate these rights, and so basically we're going to issue the certificate, but it's subject to whatever rights some other entity might ultimately conclude already existed, and it seems to me that's exactly the situation we're in here now. Your Honor, I disagree because the government has a basis for its finding that these allotments qualify as restricted Indian lands, and that's the essential question under Bryant. The very purpose of Bryant is to make sure that where the government has a non-frivolous, a non-arbitrary basis for its decision that the courts will not get into the merits of the issues. So should the state have intervened in the BLM decision? Appealed it, done something? Your Honor, the state actually was a party to the BLM proceedings, and it could have appealed the issuance of the certificates to the IBLA, but the state, for its own reasons, decided not to pursue an appeal. Because it read tightest to say that that would be a total waste of time. No, Your Honor, because there were other findings made by the BLM besides the question of the unappropriated nature of the land. The BLM found that the land was vacant, that the land was unreserved, and that it was non-material in nature. All of those questions were fair game for resolution on appeal to the IBLA if the state had any reason to think that the record didn't support it. But you're saying that they should have intervened to assert their RS-2477 rights, but I guess I'm just stuck with reading tightest as saying even if they had done that, right, the IBLA would have said we are not going to even touch that. Your Honor, our position is not that the state was somehow remiss in not pursuing RS-2477 claims before the IBLA. Our position is that essentially if the state wanted to pursue RS-2477 claims across these two native allotments, it should have done so before the native allotment certificates were issued by BLM in the late 2000s and early 2010s. Once the certificate is issued and no appeal was taken to the IBLA, the government had a non-arbitrary and non-frivolous basis for claiming that these lands, including the corridors over which RS-2477 rights were sought, are restricted Indian lands. I mean, the certificate has plainly stated that although the parties hold fee title, it cannot be alienated without the permission of the Secretary of the Interior. So that is the restricted part of the equation. And again, the BLM found that all of the requirements for an allotment of Indian land under the Alaska Native Allotment Act had been satisfied. For example, the parties had shown substantial and continuous use over a period of five years. That's another issue that if the state disagreed with, could have appealed to the IBLA and said no, that proof was not made on this record. Can we move to the condemnation? No, go ahead. I was just afraid you were going to use up the rest of the time before you get to say what your position is on the condemnation claim. On the condemnation, Your Honor, as we say in the brief there, in the government's view, federal government's view, two essential problems. One is that the United States was not clearly named as a defendant, as it must be. They were named as people who would have an interest in the property bill somewhere in there, and that was incorporated in the statement of the condemnation claim. That's true, Your Honor, but even the district court was confused about which counts were being brought against which defendants. Count 6, which is the condemnation count, the caption is expressly asserted against portions of the purty allotments. Condemnation action typically is against the land. It is typically an interim proceeding, Your Honor, but Minnesota versus the United States, the Supreme Court made it very clear that the federal government has to be named as a defendant in such a condemnation. The other problem, though, is that perhaps can that simply be amended on? Can we simply amend the complaint? Yes, any of these defects could, in theory, be corrected. The case has to be remanded in any event. If the state wanted to leave to amend its complaint, it could do that, and the district court would rule on it. So what's the other problem? The other problem is that, as we see it, even apart from the defendant, U.S. not being a defendant problem, as pled, Count 6 is not really a genuine condemnation claim because the state is first proposing a hybrid-type claim, confirm that we already own the property or condemnation. But we could fix that. We could fix that, right? The state, again, on remand, can seek leave to plead proper condemnation. No, no, I'm saying we, this court, could fix that by just simply saying dismissal wasn't proper, the district court was correct, that you're not going to get basically an end run around the Quiet Title Act, right? Yes. But you don't get to dismiss the claim. They just are going to be put to the choice, pay for everything or go home. Yes, I mean, that would be one solution. The court could also leave it up to the state to replead, seek leave to replead the count properly on remand. But the bottom line is that, as you say, Your Honor, the state can't have it both ways on Count 6. If it's a true condemnation claim, they have to admit that they don't already own the interest sought to be condemned, and they have to agree that they will owe just compensation to the person. So what's your position on the consent requirement? It is required or is not? Your Honor, as Judge Canby pointed out, there's some Ninth Circuit case law to that effect. So what's the federal government's position standing here today? Well, the court need not reach the question, but it seems to us that under the Ninth Circuit case law, the consent was given by Congress in Section 357. And if you take a look at I think the earliest Ninth Circuit case on this is Nicodemus v. Washington Water Power Company, which might be cited in the briefs, it seems pretty clear that that is the Ninth Circuit position, and it has not been overtaken or changed. Pendere is later, but it's an outlier, in other words. I agree, Your Honor. In Pendere, I really tried to grapple with what the court was doing there, and I think Mr. Wilkinson's reading may be correct, maybe an even simpler reading. Well, it's awfully hard to say that the court wasn't talking about allotted land. In the first place, 357 only applies to allotted land, and it's discussing that, and it's discussing the allotted land. It's a very strange case. I agree, Your Honor. In the passage in that case, the court just said the federal government's consent is necessary because it retains what the court called the proprietary interest in the allotments. But in the rest of the opinion, I couldn't figure out exactly what the court meant by proprietary interest. And the only thing I could think of was something similar to our case here. In the allotment certificates, the government specifically does reserve the rights of way to build ditches or canals. And if it were the case, as I think it was in Pendere, that the state was trying to condemn the entire allotment, including those federally reserved interests, then that might have been the proprietary interest, quote-unquote, that the court was referring to. But the court doesn't spell that out, so I'm speculating. I recognize you don't rely on your briefs. You don't rely on Pendere and your briefs. No, we don't, Your Honor. Counsel, we better give your co-counsel a chance, and I will give them their full time so they can rest easy. So let's hear from Mr. Kramer. Thank you. Counsel, you may run 16 seconds into the red. Thank you, Your Honor. I'm Mike Kramer. I represent Agnes Purdy and Ann Lynn Purdy, who's in the courtroom with us today. The court has always favored finality in property transactions. In this case, Agnes and Ann Lynn received deeds from the U.S. government to acreage out in the 40-mile country. Those deeds specifically provided that the land that was granted was inalienable until otherwise provided by Congress or until the Secretary approves a conveyance. Judge Beislein interpreting jurisdiction narrowly. The presumption is no jurisdiction in a situation like this, and the burden is on the party requesting jurisdiction to prove that the federal courts have it. In this case, Judge Beislein correctly ruled that the quiet title action is the exclusive remedy for parties wishing to contest a title in which the United States has an interest. It's indisputed that the United States has an interest and currently retains an interest in Agnes and Ann Lynn's property and that they couldn't be joined because they have a colorable, as opposed to Bryant, where the district court judge even said that he believed that the IBLA's decision was more than erroneous. It was disingenuous or intellectually wrong. But, counsel, if we have to accept all of the allegations in the state's complaint as true, right, that there were these preexisting uses that gave rise to an RS-2477 right-of-way, I guess I just don't see if that's where we're starting from. How is the United States' claim to title colorable? I'm not aware of any case where the courts have held that the QTA can be avoided through artful pleading or by saying the right things in a complaint and therefore withstand a 12B1 challenge to jurisdiction. If that was the case, the exclusive remedy provision of the QTA would not be, it would have no substance. People would just get around it by pleading preexisting rights and say that we need to have a factual, we need to litigate the factual issues underlying this because they're intertwined. So far, I'm not aware of any decision where any federal court has held that someone can avoid the limitations of jurisdiction inherent in the QTA by simply pleading the right facts and then asking for an evidentiary hearing and, in effect, a full-on trial about whether those facts exist or not. That's the purpose of deciding initially whether the court has subject matter jurisdiction, to avoid litigation, to avoid, in this case, dragging the federal government into a land dispute brought by a state who had plenty of opportunity to get engaged in that dispute when it was before the BLM. Remember, in this case, the BLM had a four-day hearing in Tocque. These cases, especially in Agnes' situation, the first allotment application was filed in 79. It was rejected in 89 because of a question about the mineral character of the land. Agnes appealed it. By that time, Art Purdy had died. Agnes filed an appeal in 93, and it wasn't until 2006, and the state was an active participant in this. And recall, the state wasn't even a state when these occupancies occurred, and that could be significant. Art Purdy first occupied his allotment in 1931 and Ann Lynn in 1955. Could the state, if RS-2477 had made this open-ended grant and the state was not even in existence, could that have been accepted by a couple of miners walking across these properties? Do you disagree with my reading of Titus, which is to say I read the IBLA as saying, even if the state had tried to assert its RS-2477 rights in the proceedings that you're just talking about, the IBLA would have said, no, we're not touching that. We think that either the state courts or maybe, unfortunately for us, the federal courts, that's the proper form in which to adjudicate these rights. We're just going to issue the certificate subject to whatever those rights might be. That shouldn't relieve the state from trying. They were invited to the proceeding. They were invited to appeal. They were sent a notice. Here's our decision. You have 30 days to appeal. The state chose not to. Why did they choose not to? You can look at page 48 of the excerpt under the heading trails, and here the BLM said that pursuant to 43 CFR 2560.105, the occupancy of a native allotment has to be potentially exclusive of others, and it found that it was not, that these four trails that were specifically reserved, one in Agnes' Certificate III and Anne Lynn's Certificate, there was evidence that these had been used by the public to access mining areas since as early as 1906. And there's a whole paragraph here describing the use, and they cite the Alaska Road Commission reports, the same type of evidence that the state is now asserting at this late date. They should have come in in 2006. That's what this proceeding was for. That's why the state was a party. That's why they were sent notice that Anne Lynn is claiming 40 acres, Agnes is claiming 160 acres. If you have a dispute with this, come into this hearing and evidence that dispute, and if you don't like the decision, you have 30 days to appeal. Yeah, and I agree with you. It would have made sense for the IBLA to take on the responsibility for adjudicating any asserted RS-2477 rights in that proceeding, but you didn't dispute my reading of Titus, which is to say they have just said we're not going to do that, period. I don't think we should be here in front of the Ninth Circuit, though, speculating as to what would the IBLA have done. Remember, they changed course in between Bryant and the earlier allotment cases. They totally changed their application of these things, so we can't predict what might have happened had the state taken advantage of their opportunity to participate before these deeds that are inalienable were granted to Agnes and Anne Lynn. Do you agree with the government that this case has to be remanded in any event? I think that's what the co-counsel said. No, I don't think it needs to be remanded. Again, we need finality in these property transactions. In Agnes' case, she's 93 years old, and she watched from 1931 to 2006 this process to finally get the land that she was entitled. She got a deed that says this is inalienable until Congress acts or it's otherwise conveyed by the Secretary. None of those two things have happened. Yet here we are in 2015 still arguing about whether she has a valid deed to her property. So, no, I don't think it should be remanded. This needs finality. The court needs to say that Judge Weisslein was correct. The federal courts have no jurisdiction because QTA doesn't provide it. They have a colorable, unlike in Bryant, claim that this was non-occupied, non-appropriated land. In Bryant, that land was specifically appropriated pursuant to a separate act of Congress, and the trail in question in that case was defined by Meats and Bounds, or the mineral. Counsel, you've far exceeded your time, so thank you. Thank you. Mr. Monkman? May it please the Court, Richard Monkman, and Farah Dinahanesh, the Tanana Chiefs Conference, the Traditional Council of the Athapaskan Tribes of Alaskan's Interior. Judge Watford, I asked you a question about the IBLA. I would suggest to the Court that the IBLA handles a lot of different types of land transactions. There are many types of RS-2477 claims which are brought, which are adjudicated outside of the BLM, but which do not involve restricted Indian land. This is a specific type of land which is specifically exempted from the Quiet Title Act's provisions. So it's a different type of case than perhaps most of the RS-2477 cases that come before the courts or that are resolved sometimes between private parties as to who has what kind of right of way. There is, in the State's case, the State has claimed RS-2477 rights of way. They have not proven them. They have alleged certain facts, which may be accepted as true by the court, I suppose, on a motion to dismiss, but the legal conclusions that those facts add up to on RS-2477 right of way are not accepted as true by the courts. There is many a slip between cup and lip on these claims. We pointed out the county of Shoshone case that came out of Idaho fairly recently, where the county claimed an RS-2477 right of way, where the county had certain facts, where the county had a declaration that they had accepted this road as a right of way, but the court found that, in fact, those facts didn't add up. They did not prove their claim. What the State has done here with the Purdy's allotments is to allege that these rights of way existed, but they have not yet proven them up. And based on the Quiet Title Act's exemption for Indian and restricted lands, the federal courts don't have jurisdiction to decide that. What about the condemnation? Why can't they condemn? Why can't they replead and condemn it? Well, I think in this instance, Your Honor, the condemnation claim was really thrown in as an afterthought. It's really a quiet title claim in disguise. They say they already own the RS, these rights of way, that the court should condemn them, but that the Purdy's are not entitled to compensation. It's quite clear from the case law that 357 condemnations have to be formal condemnation proceedings in accordance with law. The State has to prove a public necessity, something they probably could not do here. So yes, they could replead, Your Honor, in theory, but this particular cause of action was a Temkin village, Your Honor. It really was not a condemnation claim at all. It was thrown in as an afterthought. Of course, as the government says, they didn't name the government, but they also didn't follow the formal condemnation proceedings which are required. They didn't allege them. They didn't allege public necessity. They didn't allege fair value paid, that sort of thing. It was really a quiet title action claim simply in disguise. So we thank the Court for its time. Are there any specific questions?  Thank you, Your Honor. Mr. Wilkinson. Thank you. So turning first back to quiet title act, the United States said that its colorable claim comes from the allotment certificate, the fact that the allotment was adjudicated and that BLM determined that the land was vacant and unappropriated. But that was true in Bryant, too. In Bryant, the BLM had adjudicated that the allotment was available, and it had adjudicated that the land was vacant despite the state's material site right-of-way. But that wasn't enough in Bryant to give a colorable claim because as a legal matter, there's no colorable claim to preexisting rights-of-way. That's how the Court interpreted it in Bryant, and that's how the Court should interpret it here as well. Turning to condemnation, to perhaps shed some light on Pend Oreille, if the Court traces the language, the Court in Pend Oreille cited Rice as the source of its point that consent was required, but Rice held the opposite. And if you look at Rice, which cites Nicodemus, and you look at Nicodemus, which cited the Eighth Circuit's opinion in Minnesota, there the Eighth Circuit and Nicodemus said that the United States has consented to this, but it was referring to Congress. Congress has consented to condemnation. Because Congress has consented to condemnation, no secretarial consent is needed. And that was the line of cases, and that's what the weight of authority holds. The United States was a defendant to the condemnation action. The state pleaded that the United States held an interest to these allotments. It was an in-rem action, served the United States with a notice of condemnation, captioned to Defendant, United States of America. If there's any problem with the complaint in naming the United States, the remedy should be to remand to amend the complaint, not to dismiss. Because the Court had quiet title jurisdiction, because the RS-2477 rights-of-way predate the Purdy use and occupancy, there was quiet title jurisdiction. And under condemnation, there was jurisdiction because 25 U.S.C. 357 is an express congressional authorization and therefore has waived United States federal immunity for condemnation. Thank you. Thank all counsel for the argument in a very interesting case. The last case on the oral argument calendar is United States v. Bowers and Mejia.
judges: Canby, Bybee, Watford